IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION


MICHAEL S. WALKER, SR.;
AND TARA WALKER                                                      PLAINTIFFS


VERSUS                                          CIVIL ACTION NO. 2:09cv65KS-MTP


WTM, INC. d/b/a WINSTON TRAILERS;
LUCKY B MANUFACTURING, INC.; BTM, INC.;
EMCO SPRING, LLC; DEXTER AXLE COMPANY;
AND JOHN DOE COMPANIES and/or INDIVIDUALS A-Z          DEFENDANTS


**MEMORANDUM OPINION AND ORDER**

This matter is before the court on Motion for Summary Judgment or in the

Alternative for Adverse Inference **[#169]** filed on behalf of the defendant Dexter Axle

Company (Dexter).  The court, having reviewed the motion, the response, the briefs of

counsel, the pleadings and exhibits on file and being fully advised in the premises finds

that the motion is not well taken and should be denied.  The court specifically finds as

follows:


**FACTUAL BACKGROUND**

This litigation stems from a single-vehicle accident, in which the plaintiff Michael

Walker, was towing a bulldozer on a newly purchased trailer on or about April 19, 2007.

On that date, Mr. Walker was towing a 10 ton pro series dual tandem trailer.  Under the

manufacturer's specifications, the trailer weight capacity was 20,300 pounds.  Mr.

Walker was towing a 2003 Case 850K bulldozer when, after driving about five miles, the trailer failed causing the bulldozer to fall off the trailer. The subject trailer was manufactured by WTM, Inc., D/B/A Winston Trailers. The u-bolts for the axle assembly were manufactured by SLH Manufacturing, Inc. D/B/A BTM, Inc. The springs of the subject trailer were manufactured by Emco Spring, LLC. The axle was manufactured by Dexter Axle Company. These components were assembled or manufactured by Nuera Transport, Inc. D/B/A Lucky B Manufacturing, Inc., and sold to WTM, Inc. D/B/A Winston Trailers as a component for installation on this particular trailer.

The plaintiffs allege that due to defects in some component parts of the trailer, it failed, thereby causing the bulldozer to flip off the trailer and the towing vehicle to come to a halt in a jarring manner causing bodily injuries to Walker. Specifically, the plaintiffs allege that the trailer as designed, assembled, manufactured, marketed and sold by the defendants was in a defective and unreasonably dangerous condition to the ultimate user or consumer, including the plaintiff, Michael S. Walker, Jr., at the time it left the hands of the defendants and remained in substantially the same condition from the time it left the hands of the defendants up to and including the time it caused injury to the plaintiff, Michael S. Walker, Jr. The plaintiffs have thus brought the instant suit alleging that the Mr. Walker's injuries are directly attributable to the alleged defects in one or more aspects of the subject trailer.

Prior to the commencement of this litigation, the plaintiffs consulted Dr. Beryl Gamse and Mr. Eric Benstock of McDowell Owens, a forensic engineering firm purportedly specializing in accident reconstruction and failure analysis regarding mechanical and structural components of the subject trailer. On March 11, 2008, as

part of this consultation, the plaintiffs sent a broken u-bolt from the trailer assembly to McDowell Owens in Houston, Texas for purposes of determining its culpability in the ultimate failure of the trailer.  At the time the u-bolt was sent to McDowell Owens, this litigation had not been commenced and thus Dexter had not   been afforded an opportunity to inspect it.

On September 13, 2008, McDowell Owen's facility in Houston sustained weather damage as a result of Hurricane Ike.  Thereafter, a remediation crew hired by the landlord for McDowell Owens entered the building without permission from McDowell Owens and in the process of cleaning up the facility, the contractor apparently disposed of the u-bolt.  The plaintiffs were not informed of the loss of the broken u-bolt until December 7, 2009, when a package from McDowell Owens was opened and all that it contained was another unbroken u-bolt and the tie plate to which the u-bolts were originally bolted on the subject trailer.  Complaining that it has not had an opportunity to inspect the u-bolt and that such is critical to its case, Dexter has moved for summary judgment against the plaintiffs on a theory of spoilation of evidence or for an adverse inference instruction that the lost u-bolt was defective and that Dr. Gamse's testimony, which will not be used by the plaintiffs, would be adverse to them.

## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex*

*Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The existence of a material question of fact is itself a question of law that the district court is bound to consider before granting summary judgment. *John v. State of La. (Bd. of T. for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is not limited to that role. *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. The dispute must be genuine, and the facts must be material." *Id.* "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment." *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial. *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552." *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).

In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party. *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982). The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues. *Topalian*, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]." *John*, 757 F.2d at 708. "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants' motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn

allegations in the pleadings or arguments and assertions in briefs or legal memoranda.

The nonmoving party's response, by affidavit or otherwise, must set forth specific facts

showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also,*

*Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the]

court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents

merely filed and those singled out by counsel for special attention-the court must

consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting

*Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).


## MISSISSIPPI PRODUCTS LIABILITY ACTIONS

Mississippi adopted the doctrine of strict liability, as set forth in Section 402A of

the Restatement of Torts, Second, in the case of *State Stove Manufacturing Company*

*v. Hodges*, 189 So.2d 113, 118 (Miss. 1966), *cert. denied sub non., Yates v. Hodges*,

389 U.S. 912, 87 S.Ct. 860, 17 L.Ed.2d 784 (1967).

Section 402A(1) of the Restatement provides that, "One who sells any product in

a defective condition unreasonably dangerous to the consumer or to his property is

subject to liability for physical harm thereby caused to the ultimate user or consumer, or

to his property..." *Jackson v. Johns-Manville Sales Corporation*, 727 F.2d 506, 511 (5th

Cir. 1984); *State Stove Manufacturing, supra; Ford Motor Company v. Matthews*, 291

So.2d 169, 171 (Miss. 1974).

Under Mississippi's version of strict liability for unreasonably dangerous products,

manufacturers are not insurers of the products they produce; the existence of a product defect must be established before recovery may be obtained for a resulting injury. *Walton v. Chrysler Motor Corporation*, 229 So.2d 568, 572 (Miss. 1969), overruled on other grounds; *General Motors Corporation v. Howard*, 244 So.2d 726, 728 (Miss. 1971); *Jones v. Babst*, 323 So.2d 757, 759 (Miss. 1975). Under this version adopted in Mississippi, three elements must be established by the proof before strict liability may be imposed:

(1) that the plaintiff was injured by the product;

(2) that the injury resulted from a defect in the product which rendered it unreasonably dangerous; and

(3) that the defect existed at the time it left the hands of the manufacturer.

*Early-Gary, Inc. v. Walters*, 294 So.2d 181 (Miss. 1974).

Mississippi's codification of its prior common law of strict products liability is found at Miss. Code Ann. § 11-1-63 (2009), the Mississippi Products Liability Act ("MPLA"). That section provides, in pertinent part;

(a) The manufacturer or seller of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:

(i) 1. The product was defective because it deviated in a material way from the manufacturer's specifications or from otherwise identical units manufactured to the same manufacturing specifications, or

2. The product was defective because it failed to contain adequate warnings or instructions, or

3. The product was designed in a defective manner, or

4. The product breached an expressed warranty or failed to conform to other express factual representations upon which the claimant justifiably relied in electing to use the product; and

7

(ii) The defective condition rendered the product unreasonably dangerous to the user or consumer; and

(iii) The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

The plaintiffs are proceeding under Sections (a)(i) 1, 2, 3 and 4 -- manufacturing defect, inadequate warnings or instructions, design defect and breach of warranty. Mrs. Walker has also brought a claim of loss of consortium. Thus, in order to meet their burden of production at this point in the litigation, the plaintiffs must offer proof that at the time the trailer left the manufacturer, it was "defective," that the defect rendered the trailer "unreasonably dangerous," and that the defective condition of the trailer proximately caused Mr. Walker's alleged injuries through one of the alleged shortcomings identified in the statute.

Further, for a claim of inadequate warnings, the statute provides:

(c)(i)   In any action alleging that a product is defective because it failed to contain adequate warnings or instructions pursuant to paragraph (a)(i)2 of this section, the manufacturer or seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller, the manufacturer or seller knew or in light of reasonably available knowledge should have known about the danger that caused the damage for which recovery is sought and that the ordinary user or consumer would not realize its dangerous condition.

(ii) An adequate product warning or instruction is one that a reasonably prudent person in the same or similar circumstances would have provided with respect to the danger and that communicates sufficient information on the dangers and safe use of the product, taking into account the characteristics of, and the ordinary knowledge common to an ordinary consumer who purchases the product; or in the case of a prescription drug, medical device or other product that is intended to be used only under the supervision of a physician or other licensed professional person, taking into account the characteristics of, and the ordinary knowledge common to, a physician or other licensed professional who prescribes the drug, device or other product.

and,

(e) In any action alleging that a product is defective pursuant to paragraph (a)(i)2 of this section, the manufacturer or seller shall not be liable if the danger posed by the product is known or is open and obvious to the user or consumer of the product, or should have been known or open and obvious to the user or consumer of the product, taking into account the characteristics of, and the ordinary knowledge common to, the persons who ordinarily use or consume the product.

Miss. Code Ann. § 11-1-63(c)(i), (ii).

Additionally, for a claim of design defect, the MPLA provides:

(b) A product is not defective in design or formulation if the harm for which the claimant seeks to recover compensatory damages was caused by an inherent characteristic of the product which is a generic aspect of the product that cannot be eliminated without substantially compromising the product's usefulness or desirability and which is recognized by the ordinary person with the ordinary knowledge common to the community.

and,

(f) In any action alleging that a product is defective because of its design pursuant to paragraph (a)(i)3 of this section, the manufacturer or product seller shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:

(i) The manufacturer or seller knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought; and

(ii) The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

Miss. Code Ann. § 11-1-63(b), (f)(i), (ii).

Finally, in order for a plaintiff to prove a product is unreasonably dangerous due to a design defect, one of the main elements he must offer proof of, and ultimately prove, is that the product "failed to function as expected" at the time it left the control of the manufacturer. *See Austin v. Will-Burt Co.*, 361 F.3d at 872.

## ANALYSIS

In the present case, defendant Dexter bases its entitlement to summary

judgment on the lone fact that the u-bolt was disposed of and that such was so

important to its defense of the case that it is unduly prejudiced to the point that all of the

plaintiffs' claims should be dismissed summarily.  Dexter cites to *Powe v. Wagner*

*Electric Sales Corp.*, 589 F. Supp. 657 (5th Cir. 1984) to support its position.

In *Powe*, two women involved in a single vehicle car accident brought suit

against the manufacturer of an allegedly defective master brake cylinder.  The plaintiffs

argued that the defective nature of the brake cylinder caused the brakes to malfunction

while approaching an intersection on a downhill incline, which in turn led to a crash.

After the accident, the plaintiffs carried the car to a mechanic who replaced the master

cylinder and disposed of it.  Thus, the plaintiffs willingly had the brake master cylinder,

which plaintiffs claimed caused the accident, removed from the car and discarded, and

thereafter sought to make a claim against the manufacturer without ever having had an

expert examine the master cylinder and basing their case solely on circumstantial

evidence of the alleged defect to the master cylinder.  *Id.* at 658-61.

Upon motion for summary judgment, the manufacturer was dismissed.  The Fifth

Circuit, in upholding the summary judgment, stated that "it has been generally held that

where the product itself was destroyed or is otherwise unavailable and there is no other

evidence of the defect, the case for the jury is not made."  *Id.* at 661-62.  However the

court qualified that holding by stating "[t]his would seem to be especially true where the

fact that the evidence is missing is the fault of the Plaintiff."  *Id.*   *See also Thompson v.*

10

*Ford Motor Co.*, 2007 WL 2580337 (S.D. Miss. 2007)(holding that the fact that an allegedly defective product was unavailable does not defeat a products liability case, but only to the extent the "Plaintiff may prove his case by circumstantial evidence.") (citing *Powe, supra*); *Coca Coca Bottling Co. v. Reeves*, 486 So.2d 374, 381 (Miss. 1981)).

In the matter at hand, the plaintiffs sent the u-bolt to a consulting expert, allegedly fully intending to retain the u-bolt for evidentiary purposes, and due to unforseen circumstances, and not by the fault of the plaintiffs, the u-bolt was discarded. Further, the plaintiffs contend that they do not simply intend to make their case based on circumstantial evidence surrounding the missing u-bolt. Rather, the plaintiffs assert a theory of the case that has nothing to do with the u-bolt (a brake failure allegedly caused the accident) and have retained experts and have other direct evidence (photographs, examination and disassembly of the brakes, etc.) to attempt to prove these allegations.

In spite of asserting how prejudiced it is by the missing u-bolt, the plaintiffs assert that defendant Dexter has had the opportunity to depose Dr. Gamse, an expert who examined the u-bolt; has been apprised of all evidence in the possession of the plaintiffs having to do with the missing u-bolt, including highly detailed photographs; and has ignored all of the evidence regarding the missing u-bolt in any of its expert reports. They also point out that defendant Dexter has failed to subpoena documents or depose anyone from former defendant SLH Manufacturing, Inc. D/B/A BTM, Inc., who, immediately subsequent to the subject April 2007 accident, examined the missing u-bolt.

The court agrees that the best evidence would be the missing u-bolt. Photographs simply cannot substitute for destructive testing to verify the strength and other necessary properties of the u-bolt. However, where the evidence is lost through no fault of the plaintiffs and the plaintiffs have additional theories of liability in addition to circumstantial and photographic evidence surrounding the failed u-bolt, summary judgment in favor of Dexter at this time is not warranted.

Dexter next argues in the alternative for an adverse inference that the u-bolt was defective. In response, the plaintiffs argue that defendant Dexter is not entitled to an adverse inference as to the loss of the u- bolt. The plaintiffs point to several Fifth Circuit cases which they assert indicate that the law in the Fifth Circuit is crystal clear that an adverse inference is only available when a party has intentionally, fraudulently, or in bad faith, discarded evidence. *Caparotta v. Entergy Corp.*, 168 F. 3d 754, 756 (5th Cir. 1999); *Vick v. Texas Employment Comm.*, 514 F. 2d 734, 737 (5th Cir. 1975)(*see also Stahl v. Wal-Mart Stores, Inc.*, 47 F. Supp. at 783, 785-86 (S.D. Miss. 1998); and *Tieken v. Clearing Niagra, Inc.* 1997 U.S. Dist LEXIS 9854 at 7-12)(N.D. Miss. 1997).

In rebuttal to that, Dexter points to three district court cases from Texas which allude to the availability of an adverse inference instruction when the evidence is merely lost - whether the plaintiff is at fault or not. *See Smith v. Am. Founders Fin. Corp.*, 365 B.R. 647, 681 (S.D.Tex. 2007) ("A court may assume facts against a party that destroys or loses evidence subject to a preservation obligation."); *FDIC v. Hurwitz*, 384 F.Supp.2d 1039, 1099 (S.D.Tex. 2005); *Lopez v. Kempthorne*, 684 F.Supp.2d 827, 889-90 (S.D.Tex. 2010). The court disagrees with the analysis of Dexter as to these

cases and finds that the Fifth Circuit cases are controlling on this issue under the facts of this case. Dexter is not entitled to an adverse inference instruction that the u-bolt was defective where the u-bolt was lost through no fault of the plaintiffs.

Finally, Dexter argues that it is entitled to an instruction that Dr. Gamse's testimony would be adverse to the plaintiffs after the plaintiffs elected not to use him. Dr. Gamse apparently inspected the u-bolt and took photographs of it but performed no testing on it. He has filed affidavits in support of the plaintiffs' response to the present motion. However, Dexter has not attempted to depose Dr. Gamse and if it thinks his testimony would be adverse to the plaintiffs, that seems like the proper course. The plaintiffs have not indicated that they would object to that. Additionally, the plaintiffs have a completely different theory of the case than a mere failure of the u-bolt and have provided experts who support their theory. Thus, even if failure of the u-bolt was one theory of liability, it is not incumbent upon the plaintiffs to offer proof on every possibility, even though such would seem to be advantageous to them. In this case, it is obvious that their offer of proof on the failure of the u-bolt is limited due to its loss. Thus, to allow the defendant Dexter an adverse inference instruction on Dr. Gamse's purported opinions is totally void of merit.

IT IS THEREFORE ORDERED AND ADJUDGED that the defendant Dexter's Motion for Summary Judgment or in the Alternative for Adverse Inference **[#169]** is denied.

SO ORDERED AND ADJUDGED this the 27th day of September, 2010.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE

13