IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**MICHAEL S. WALKER, SR.;**
**AND TARA WALKER**                                                                                   **PLAINTIFFS**

**VERSUS**                                                         **CIVIL ACTION NO. 2:09cv65KS-MTP**

**WTM, INC. d/b/a WINSTON TRAILERS;**
**LUCKY B MANUFACTURING, INC.; BTM, INC.;**
**EMCO SPRING, LLC; DEXTER AXLE COMPANY;**
**AND JOHN DOE COMPANIES and/or INDIVIDUALS A-Z**        **DEFENDANTS**


## MEMORANDUM OPINION AND ORDER

This matter is before the court on Motion to Strike defendant Dexter Axle Company's Expert Report of Jeremy C. Hoffpauir and Dr. Richard V. Baratta or, Alternatively, Motion *in Limine* to Exclude Portions Thereof **[#167]**, and an Amended Motion to that same effect **[#177]**, filed on behalf of the plaintiffs. The court having reviewed the motion, the response, the briefs of counsel, the authorities cited, the pleadings and exhibits filed, and being otherwise fully advised in the premises finds that the motion should be granted in part. The court specifically finds as follows:


## FACTUAL BACKGROUND

This litigation stems from a single-vehicle accident, in which the plaintiff Michael Walker, was towing a bulldozer on a newly purchased equipment trailer on or about April 19, 2007. On that date, Mr. Walker was towing a 10 ton pro series dual tandem

trailer.  Under the manufacturer's specifications, the trailer weight capacity was 20,300 pounds.  Mr. Walker was towing a 2003 Case 850K bulldozer when, after driving about five miles, the trailer failed causing the bulldozer to fall off the trailer.  The subject trailer was manufactured by WTM, Inc., D/B/A Winston Trailers.  The u-bolts for the axle assembly were manufactured by SLH Manufacturing, Inc. D/B/A BTM, Inc.  The springs of the subject trailer were manufactured by Emco Spring, LLC.  The axle was manufactured by Dexter Axle Company.  These components were assembled or manufactured by Nuera Transport, Inc. D/B/A Lucky B Manufacturing, Inc., and sold to WTM, Inc. D/B/A Winston Trailers as a component for installation on this particular trailer.

      The plaintiffs allege that due to defects in some component parts of the trailer, it failed, thereby causing the bulldozer to flip off the trailer and the towing vehicle to come to a halt in a jarring manner causing bodily injuries to Walker.  Specifically, the plaintiffs allege that the trailer as designed, assembled, manufactured, marketed and sold by the defendants was in a defective and unreasonably dangerous condition to the ultimate user or consumer, including the plaintiff, Michael S. Walker, Jr., at the time it left the hands of the defendants and remained in substantially the same condition from the time it left the hands of the defendants up to and including the time it caused injury to the plaintiff, Michael S. Walker, Jr.  The plaintiffs have thus brought the instant suit alleging that the Mr. Walker's injuries are directly attributable to the alleged defects in one or more aspects of the subject trailer.

      Defendant Dexter Axle's expert witness designation deadline was May 17, 2010.

On that date it designated as two of its expert witnesses Jeremy C. Hoffpauir, P.E. (accident reconstruction), and Richard V. Baratta, Ph.D. (accident reconstruction). In the report of Mr. Hoffpauir and Dr. Baratta, which is titled "Vehicle Accident Reconstruction" it was stated that they were retained to "reconstruct the incident."

The plaintiffs assert that throughout their report, Mr. Hoffpauir and Dr. Baratta make clear that they cannot state what occurred due to lack of evidence, and then postulate on non-existent evidence, and in the end make no opinion as to what actually occurred. According to the plaintiffs, they state that further examination of a failed u-bolt is needed to determine how it failed; "the weight of the bulldozer could have been a factor;" the speed of the truck and trailer could not be determined; speed could have been a factor based on nonexistent dimensional data; and the speed of the truck could have been greater than 30 m.p.h.

The plaintiffs continue with the argument that throughout the report, Mr. Hoffpauir and Dr. Baratta repeatedly admit, and make it abundantly clear, that they do not have the evidence to make calculations as to what actually occurred and have no precise opinion as to what actually occurred. The plaintiffs conclude with the assertion that the opinions offered by Mr. Hoffpauir and Dr. Baratta have no evidentiary basis to support them and, thus, the expert report is not "based upon sufficient facts or data" as required by Federal Rules of Evidence 702.

The plaintiffs argue, alternatively, that Mr. Hoffpauir and Dr. Baratta leave the field of accident reconstruction in their expert report and enter the field of failure analysis, which was already covered by the report of Dr. Shelton, another one of

Dexter's experts. Specifically, the plaintiffs contend that Mr. Hoffpauir and Dr. Baratta opine that "the right outboard u-bolt on the front axle of the trailer failed during the incident," and thereafter further opine as to how this may have occurred. Thus, according to the plaintiffs, this opinion by Mr. Hoffpauir and Dr. Baratta duplicates the expert report of Dr. Shelton, and is outside the field of accident reconstruction, which they state their report entails, and enters the field of failure analysis or engineering, which is what Dr. Shelton's report entails.

## **ADMISSIBILITY OF EXPERT TESTIMONY**

Since the Supreme Court's decision in *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed 2d 469 (1993), federal courts have heeded the admonition set forth therein that they should take seriously their role as "gatekeepers" of testimony offered by expert witnesses in federal courts. The initial reaction to *Daubert* was that it was a victory for the *Daubert* plaintiffs in that it vacated a Ninth Circuit opinion which upheld the exclusion of the plaintiff's experts in one round of the Bendectin birth defect cases. The Supreme Court in *Daubert* said the *Frye* general acceptance test for expert testimony had been superseded by Rule 702 of the Federal Rules of Evidence which went into effect in 1975. Rule 702 provided at the time:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
>
> A primary requisite of the rule was that the evidence or testimony "assist the trier

of fact to understand the evidence or determine a fact in issue." The commentators universally agree that the effect of *Daubert* was not the loosening of the allowance of expert testimony but in fact a tightening thereof. In fact when *Daubert* was vacated and remanded to the Ninth Circuit, the Ninth Circuit again upheld the district court's exclusion of the plaintiff's expert witnesses based on the new standard enunciated in *Daubert*. *Wm. Daubert, et al v. Merrell Dow Pharmaceuticals, Inc.*, 43 F. 3d 1311 (9th Cir. 1995). Thereafter the United States Supreme Court denied certiorari. *Daubert, et al v. Merrell Dow Pharmaceuticals, Inc.*, 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995).

The cases and commentaries interpreting *Daubert* are legion at this point. The Supreme Court in *Daubert* enumerated several factors to be considered by the trial court in determining whether or not a particular expert witness's testimony was relevant and reliable to the point that it should be allowed in federal court. Those factors are not exclusive and were merely presented as a guideline. The federal courts were instructed that the *Daubert* standard is "a flexible one" to be applied according to the facts and circumstances of each individual case. 509 U.S. at 594.

After *Daubert*, there was much discussion as to whether or not it applied merely to cases involving scientific knowledge or whether it should be expanded to include all expert testimony regardless of its scientific basis. The Supreme Court answered that question in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L.Ed.2d 238 (1999). The *Kumho* court held

> We conclude that *Daubert's* general holding--setting forth the trial judge's

> general "gatekeeping" obligation--applies not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge.

119 S. Ct. at 1171.  Ultimately "the objective of that [gatekeeping] requirement is to insure the reliability and relevancy of expert testimony." *Kumho*, 119 S. Ct. at 1176.  In *Kumho* "the relevant issue was whether the expert could reliably determine the cause of [the] tire's separation." 119 S. Ct. at 1177.

This court has been instructed by *Kumho* interpreting *Daubert* that the opinions stated by Mr. Hoffpauir and Dr. Baratta are not the only objects of the relevancy and reliability determination.  Indeed, the court is also required to determine the reliability of their basis for arriving at those conclusions. 119 S.Ct. at 1177.  The factors set forth in *Daubert* and recited in *Kumho* include whether the theory or technique can be and has been tested; whether or not it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether there are standards controlling the technique's operation and whether the theory or technique enjoys general acceptance within a relevant scientific community.

This court recognizes that several of the factors listed above are not relevant to a determination of the issue before this court.  Therein lies the flexibility of the gatekeeping responsibility as mandated by the Supreme Court.  As the Fifth Circuit has noted, several prior opinions on admissibility of expert testimony placed undue emphasis on *qualifications* of a particular expert witness over the *reliability* of that expert's proposed testimony and such reflected a "pre-*Daubert*" sensibility.  *See, Watkins v. Telsmith*, 121 F. 3d 984, 992 (5th Cir. 1997).  In this age of "post-*Daubert*"

sensibility, especially as enlightened by the United States Supreme Court's pronouncements in *Kumho*, the trial courts were instructed to carefully execute the responsibility placed upon the court as a "gatekeeper" of proposed expert testimony.

In response to *Daubert* and the many cases applying *Daubert*, including *Kumho*, Federal Rule of Evidence 702 was amended effective December 1, 2000, by adding three requirements for the admissibility of expert testimony. *See Hodges v. Mack Trucks Inc.*, 474 F.3d 188 (5th Cir. 2006). As amended, Rule 702 now reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The *Daubert* factors remain relevant to the determination of the reliability of expert testimony under Rule 702, as amended. *See Guy v. Crown Equipment Corp.* 394 F.3d 320, 325 (5th Cir. 2004). In assessing the basis of an expert's proposed testimony, the Fifth Circuit has held that an "expert's testimony [can be] based mainly on his personal observations, professional experience, education and training." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002).

Ultimately, however, the question of whether an expert's testimony is reliable is a fact-specific inquiry. *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir.2004). The proponent of the expert testimony must prove reliability by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc). "It is then the district court's responsibility to 'make certain that an

expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"  *Dart v. Kitchens Bros. Mfg. Co.*, 253 Fed.Appx. 395, 398 (5th Cir. 2007)(quoting *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. 1167).

## **ANALYSIS**

As stated above, the plaintiffs argue that the expert report and opinions of Mr. Hoffpauir and Dr. Baratta are inadmissible because they are not based on sufficient facts and data, and are simply a litany of hypotheses as to what could have occurred to cause the subject accident.  Thus, they have moved to strike the entire report, or alternatively, portions thereof and to limit the testimony of the two experts in accordance with the court's ultimate ruling.

Dexter Axle responds by arguing that in the Fifth Circuit, courts have consistently discussed the incorporation of several types of data as supporting the admissibility of accident reconstruction reports, including: 1) photographs of the accident scene; 2) observations as to road conditions; 3) the nature of gouges or scuff-marks on the highway; 4) measurements and other data collected from the accident scene; and 5) examination of tires and other mechanical parts involved in the accident.  *See Stancill v. McKenzie Tank Lines, Inc.*, 497 F.2d 529 (5th Cir. 1974); and *Wilson v. Woods*, 163 F.3d 935 (5th Cir. 1999).

Thus, Dexter Axle argues that the expert report of  Mr. Hoffpauir and Dr. Baratta

reveals: 1) that the experts reviewed 159 photographs taken at the accident scene immediately after the wreck and from their on-site inspection some time later; 2) the experts discuss the road conditions at the scene of the wreck; 3) they make reference to their examination of the tires and other mechanical parts of the dozer, the trailer and the trailer's component parts; 4) they refer to gouge and skid marks from the accident scene; and 5) they discuss taking into account dimensional information regarding the accident site, the trailer and the dozer.

  This court has no problem recognizing that Mr. Hoffpauir and Dr. Baratta are qualified by education, training and experience to render an opinion regarding accident reconstruction.  Nor does the court dispute that there are numerous sources of facts and data upon which experts may base their opinions.  Indeed, it is not the contention of the plaintiffs that Mr. Hoffpauir and Dr. Baratta are not qualified as experts in accident reconstruction.  The plaintiffs, by this motion, have, however, questioned the reliability of Mr. Hoffpauir's and Dr. Baratta's methodology and admitted lack of evidence in reaching the conclusions which they have reached based on their own assertions as to the paucity of information available to them in forming their conclusions.

  The plaintiffs assert that based on the opinions offered by Mr. Hoffpauir and Dr. Baratta, the jury would be left with nothing but speculation and conjecture to decide as to how the subject accident occurred.  The court agrees.  In the opinion of the court, if the testimony of Mr. Hoffpauir and/or Dr. Baratta, as stated in their expert report, were to go to the jury without limitation, it would not be helpful to the jury as it would be speculative in the specifics set forth hereinafter.

Specifically, Mr. Hoffpauir and/or Dr. Baratta state four "CONCLUSIONS" in Section II of their expert report. Those conclusions are:

> 1. The incident occurred as the International and trailer were turning left onto Newco Road from Carnes Road.
>
> 2. The right outboard U-bolt on the front axle of the trailer failed during the incident. Further investigation, including examination fo the failed U-bolt, is required to determine if the U-bolt failed prior to the incident or as a result of the loads applied to the suspension on the right side of the trailer during the left turn.
>
> 3. The dual skidmarks visible in the scene photographs were not caused by the tires on the left side of the trailer.
>
> 4. The speed of the International as it made the turn may have contributed to the incident.

As to Conclusions 1 and 3, the court sees no problem with the testimony of Mr. Hoffpauir and/or Dr. Baratta. However, these conclusions appear to be cumulative and/or not in dispute. Conclusions 2 and 4 give the court the most problem.

It is undisputed that a portion of the first sentence of Conclusion 2 is true, *i.e.*, "The right outboard U-bolt on the front axle of the trailer failed . . .." Whether it failed during or prior to the incident has not been established and these experts opine that they need further information to make that call. Thus, neither Mr. Hoffpauir nor Dr. Baratta will be allowed to testify about the failure of the U-bolt as a causative factor in this incident and any reference to such will be stricken from the expert report offered by them prior to its use in the case.

Finally, as to Conclusion 4, neither Mr. Hoffpauir nor Dr. Baratta were able to make any determinations as to the speed of the truck prior to the incident. They stated that there was simply not enough data available to make a reasonable determination of

such. Thus, they will not be allowed to testify that speed was a causative factor in the accident. This is in conformity with their speculative conclusion in No. 4 that the "speed of the International as it made the turn may have contributed to the incident." More is required to offer an opinion that what "may" have occurred.

This court will again reiterate that it is not finding that Mr. Hoffpauir and Dr. Baratta are not properly qualified as experts in accident reconstruction. The court does find, however, that their opinions in regard to the particular conclusions set out above are not relevant nor reliable under Rule 702 so that they would assist the trier of fact. However, in so far as the experts purport to present direct observations derived from on-site visits or photographic evidence or measurements as those observations relate to the reconstruction of how this accident occurred, they are admissible. However, any conclusions as to how speed or the broken U-bolt ultimately contributed to or caused this wreck are outside the scope of relevant testimony based on the speculative nature of such conclusions by Mr. Hoffpauir and Dr. Baratta.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Motion to Strike **[#167]** and **[#177]** are granted to the extent that the defendant Dexter Axle's expert testimony of Mr. Hoffpauir and Dr. Baratta regarding any conclusions as to how speed or the broken U-bolt ultimately contributed to or caused this wreck are inadmissable as set forth herein and should be stricken from the expert report furnished by them.

SO ORDERED AND ADJUDGED this the 30th day of September, 2010.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE