**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

**MICHAEL S. WALKER, SR.;
AND TARA WALKER**                                                                 **PLAINTIFFS**


**VERSUS**                                              **CIVIL ACTION NO. 2:09cv65KS-MTP**


**WTM, INC. d/b/a WINSTON TRAILERS;
LUCKY B MANUFACTURING, INC.; BTM, INC.;
EMCO SPRING, LLC; DEXTER AXLE COMPANY;
AND JOHN DOE COMPANIES and/or INDIVIDUALS A-Z**          **DEFENDANTS**



## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion *In Limine* to Exclude the Expert

Opinion of J. Albert McEachern **[#172]** filed on behalf of the defendant Dexter Axle

Company.  The court having reviewed the motion, the response, the briefs of counsel,

the authorities cited, the pleadings and exhibits filed, and being otherwise fully advised

in the premises finds that the motion should be denied.  The court specifically finds as

follows:



## FACTUAL BACKGROUND

This litigation stems from a single-vehicle accident, in which the plaintiff Michael

Walker, was towing a bulldozer on a newly purchased trailer on or about April 19, 2007.

On that date, Mr. Walker was towing a 10 ton pro series dual tandem trailer.  Under the

manufacturer's specifications, the trailer weight capacity was 20,300 pounds.  Mr.

Walker was  towing a 2003 Case 850K bulldozer when, after driving about five miles, the trailer failed causing the bulldozer to fall off the trailer.  The subject trailer was manufactured by WTM, Inc., D/B/A Winston Trailers.  The u-bolts for the axle assembly were manufactured by SLH Manufacturing, Inc. D/B/A BTM, Inc.  The springs of the subject trailer were manufactured by Emco Spring, LLC.  The axle was manufactured by Dexter Axle Company.  These components were assembled or manufactured by Nuera Transport, Inc. D/B/A Lucky B Manufacturing, Inc., and sold to WTM, Inc. D/B/A Winston Trailers as a component for installation on this particular trailer.

The plaintiffs allege that due to defects in some component parts of the trailer, it failed, thereby causing the bulldozer to flip off the trailer and the towing vehicle to come to a halt in a jarring manner causing bodily injuries to Walker.  Specifically, the plaintiffs allege that the trailer as designed, assembled, manufactured, marketed and sold by the defendants was in a defective and unreasonably dangerous condition to the ultimate user or consumer, including the plaintiff, Michael S. Walker, Jr., at the time it left the hands of the defendants and remained in substantially the same condition from the time it left the hands of the defendants up to and including the time it caused injury to the plaintiff, Michael S. Walker, Jr.  The plaintiffs have thus brought the instant suit alleging that the Mr. Walker's injuries are directly attributable to the alleged defects in one or more aspects of the subject trailer.

## ADMISSIBILITY OF EXPERT TESTIMONY

Since the Supreme Court's decision in *Daubert v. Merrill Dow Pharmaceuticals,*

2

*Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed 2d 469 (1993), federal courts have heeded the admonition set forth therein that they should take seriously their role as "gatekeepers" of testimony offered by expert witnesses in federal courts.  The initial reaction to *Daubert* was that it was a victory for the *Daubert* plaintiffs in that it vacated a Ninth Circuit opinion which upheld the exclusion of the plaintiff's experts in one round of the Bendectin birth defect cases.  The Supreme Court in *Daubert* said the *Frye* general acceptance test for expert testimony had been superseded by Rule 702 of the Federal Rules of Evidence which went into effect in 1975.  Rule 702 provided at the time:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

A primary requisite of the rule was that the evidence or testimony "assist the trier of fact to understand the evidence or determine a fact in issue."  The commentators universally agree that the effect of *Daubert* was not the loosening of the allowance of expert testimony but in fact a tightening thereof.  In fact when *Daubert* was vacated and remanded to the Ninth Circuit, the Ninth Circuit again upheld the district court's exclusion of the plaintiff's expert witnesses based on the new standard enunciated in *Daubert*. *Wm. Daubert, et al v. Merrell Dow Pharmaceuticals, Inc.*, 43 F. 3d 1311 (9th Cir. 1995).  Thereafter the United States Supreme Court denied certiorari.  *Daubert, et al v. Merrell Dow Pharmaceuticals, Inc.*, 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995).

The cases and commentaries interpreting *Daubert* are legion at this point.  The

Supreme Court in *Daubert* enumerated several factors to be considered by the trial

court in determining whether or not a particular expert witness's testimony was relevant

and reliable to the point that it should be allowed in federal court.  Those factors are not

exclusive and were merely presented as a guideline.  The federal courts were instructed

that the *Daubert* standard is "a flexible one" to be applied according to the facts and

circumstances of each individual case.  509 U.S. at 594.

      After *Daubert*, there was much discussion as to whether or not it applied merely

to cases involving scientific knowledge or whether it should be expanded to include all

expert testimony regardless of its scientific basis.  The Supreme Court answered that

question in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143

L.Ed.2d 238 (1999).  The *Kumho* court held

> We conclude that *Daubert's* general holding--setting forth the trial judge's
> general "gatekeeping" obligation--applies not only to testimony based on
> "scientific" knowledge, but also to testimony based on "technical" and
> "other specialized" knowledge.

119 S. Ct. at 1171.  Ultimately "the objective of that [gatekeeping] requirement is to

insure the reliability and relevancy of expert testimony."  *Kumho*, 119 S. Ct. at 1176.  In

*Kumho* "the relevant issue was whether the expert could reliably determine the cause of

[the] tire's separation."  119 S. Ct. at 1177.

      This court has been instructed by *Kumho* interpreting *Daubert* that the opinions

stated by Mr. McEachern are not the only objects of the relevancy and reliability

determination.  Indeed, the court is also required to determine the reliability of his basis

for arriving at those conclusions. 119 S.Ct. at 1177.  The factors set forth in *Daubert*

4

and recited in *Kumho* include whether the theory or technique can be and has been tested; whether or not it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether there are standards controlling the technique's operation and whether the theory or technique enjoys general acceptance within a relevant scientific community.

This court recognizes that several of the factors listed above are not relevant to a determination of the issue before this court. Therein lies the flexibility of the gatekeeping responsibility as mandated by the Supreme Court. As the Fifth Circuit has noted, several prior opinions on admissibility of expert testimony placed undue emphasis on *qualifications* of a particular expert witness over the *reliability* of that expert's proposed testimony and such reflected a "pre-*Daubert*" sensibility. *See, Watkins v. Telsmith*, 121 F. 3d 984, 992 (5th Cir. 1997). In this age of "post-*Daubert*" sensibility, especially as enlightened by the United States Supreme Court's pronouncements in *Kumho*, the trial courts were instructed to carefully execute the responsibility placed upon the court as a "gatekeeper" of proposed expert testimony.

In response to *Daubert* and the many cases applying *Daubert*, including *Kumho*, Federal Rule of Evidence 702 was amended effective December 1, 2000, by adding three requirements for the admissibility of expert testimony. *See Hodges v. Mack Trucks Inc.*, 474 F.3d 188 (5th Cir. 2006). As amended, Rule 702 now reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and

5

methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The *Daubert* factors remain relevant to the determination of the reliability of expert testimony under Rule 702, as amended. *See Guy v. Crown Equipment Corp.* 394 F.3d 320, 325 (5th Cir. 2004). In assessing the basis of an expert's proposed testimony, the Fifth Circuit has held that an "expert's testimony [can be] based mainly on his personal observations, professional experience, education and training." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 247 (5th Cir. 2002).

Ultimately, however, the question of whether an expert's testimony is reliable is a fact-specific inquiry. *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir.2004). The proponent of the expert testimony must prove reliability by a preponderance of the evidence. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir.1998) (en banc). "It is then the district court's responsibility to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Dart v. Kitchens Bros. Mfg. Co.*, 253 Fed.Appx. 395, 398 (5th Cir. 2007)(quoting *Kumho Tire*, 526 U.S. at 152, 119 S.Ct. 1167).

Therefore, according to the defendant, before Mr. McEachern may testify, this court must, at a minimum, determine that (1) he is qualified to offer opinion testimony; (2) he has employed sound methodology in forming his opinions; (3) the data he relied on in forming his opinions is reliable; and, most importantly, (4) his opinion testimony

6

will assist the trier of fact to understand the evidence or to determine a fact in issue.  Of course, the burden of establishing the admissibility of Mr. McEachern's testimony falls on plaintiffs, as the proponents of that expert testimony.  *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002); Daubert, 509 U.S. at 592, n. 10.

Finally, if an expert's testimony survives the threshold scrutiny under Rule 702, it is subject to further review under Rule 403.  *See Daubert*, 509 U.S. at 595; *Brock v. Caterpillar, Inc.*, 94 F.3d 220, 226 (6th Cir. 1996).  "[E]xpert evidence can be both powerful and quite misleading . . . [Rule] 403 . . . exercises more control over experts than over lay witnesses."  *Daubert*, 509 U.S. at 595.  To this end, an expert opinion's "lack of reliable support may render it more prejudicial than probative, making it inadmissible under [Rule] 403."  *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

## ANALYSIS

Mr. McEachern's expert report concludes that the subject accident was caused, at least in part, by insufficient clearance between the brake shoes and brake drum on the left side of the front axle resulting in the brakes locking the left front dual wheels to the axle.  Dexter Axle first attacks this conclusion by asserting that Mr. McEachern testified in his deposition that he attempted to measure the diameter of the brake shoes and brake drum but was unable to.  Mr. McEachern did testify that was unable to get accurate measurements with the particular calipers he was using because of the drum

7

and shoes still being attached to the axle.  However, he used a feeler gauge to determine that the right side brake shoes had at least twenty-five thousandths of an inch  (25/1000") clearance whereas the left side had zero (0) clearance.   Indeed, the left side was locked up and would not rotate.  Mr. McEachern further testified that he did not attempt to measure the components again after the left drum was removed with a hydraulic puller because it was unnecessary.

Dexter attacks this failure as further proof that Mr. McEachern's opinion is unreliable.  However, according to the testimony, the reason that Mr. McEachern did not attempt to re-measure the components was that it was obvious from the feeler gauge test and from observation that the left brake shoes were expanded beyond the diameter which would allow free movement of the left drum.  The court fails to see how Mr. McEachern's failure to re-measure the shoes and drums can diminish the reliability of his testimony as it relates to his ultimate conclusions on causation.

Dexter Axle also attacks Mr. McEachern's alleged failure to consult any literature concerning the proper clearance of a trailer brake shoe and its corresponding drum. That argument is completely disingenuous when confronted with the fact that the clearance was zero.  Mr. McEachern is an engineer with impressive credentials in the area of automotive engineering and automotive components.  He personally measured and observed the zero clearance problem on the left brake drum assembly.  His opinion that the left front brake locked up and caused or contributed to this accident is not inherently unreliable or untrustworthy based on his education, training, experience and his personal observations of the relevant facts.

8

Dexter Axle next attacks Mr. McEachern's opinion related to improper brake adjustment of the left front brake assembly.   Dexter asserts that Mr. McEachern has no scientific basis for concluding that the left front brake adjuster was not properly adjusted when installed.   Mr. McEachern testified that he observed a difference in the length of the left front brake adjuster as compared to other adjusters on non-offending assemblies when reviewing photographs of the component parts.   He admits that he did not actually measure the lengths of any of the adjusters.   However, he goes on to state that the proper way to determine if a brake is adjusted correctly is to measure the distance between the brake shoe and brake drum, not to measure the distance a brake adjuster itself is set.   Here, that distance was zero on the left front brake assembly.

Once again, Dexter Axle fails to convince the court that Mr. McEachern's opinions are unreliable or not based on sufficient facts or data.   Indeed, the opinions of the expert may present fertile grounds for cross-examination, but they are not excludable under the law as presented above.

Finally, Dexter Axle attacks Mr. McEachern's opinion related to the overheating of the left brake drum assembly.   Mr. McEachern testified that he observed a spot on the shoes that appeared to him, based on his training and experience, to indicate that the brakes overheated.   He took scrapings from the left brake shoes/drum and subjected them to analysis under a scanning electron microscope to support his conclusion.

The expert's extensive education, training and experience in automotive components certainly qualifies him to render such an opinion based on his observations

9

and testings.  Dexter Axle may certainly disagree with the methodology and conclusions of Mr. McEachern, but that alone does not diminish their reliability or admissibility as provided by *Daubert* and its progeny.  The same is true of Dexter Axle's passing argument that McEachern did not exclude all other possible causes of the accident. That is, once again, subject matter for cross-examination, not exclusion.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Motion *In Limine* to Exclude the Expert Opinion of J. Albert McEachern **[#172]** filed on behalf of the defendant Dexter Axle Company is denied.

SO ORDERED AND ADJUDGED this the 30th day of September, 2010.


*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE